MARTIEN, *Appellant,* v. NORRIS.

| 91 | 465 |
| 103 | 293 |
| 91 | 465 |
| 114 | 592 |
| 91 | 465 |
| 153 | 670 |
| 91 | 465 |
| 86a | 681 |

1. **Jointure : DOWER.** An absolute conveyance in fee-simple of land to a wife, and which contains no expression that it is to be in discharge of her dower in the real estate of her husband, does not have the effect of creating an estate in jointure which she is required by law (R. S., sec. 2202) to renounce in order to have her dower.

2. **Dower : WILL : ELECTION.** Where a testator by his will makes no devise of real estate to his wife, and the bequest of personalty contained in it is voluntary and unconditional, she is not required to renounce the provisions of the will or make an election under Revised Statutes, sections 2199 and 2200, in order to have dower in the real estate of which her husband died seized.

3. ——— : ——— : ———. The will of the husband contained a recital that he had purchased a house and lot and caused the same to be conveyed to his wife, it " to be held by her in lieu and discharge of her dower in my real estate, and the same having been accepted by her as such, I do, in this, my last will and testament, make no further provision for her out of my real estate." *Held,* that such recital was no evidence by which the wife's absolute title in fee-simple in the real estate conveyed to her by the deed of a stranger could be converted into an estate of jointure, and also further held that the deed and will, together or separately, evidenced no such provision made for the wife out of the estate of the husband as required a renunciation of the provisions of the will, in order that she might have her dower in her husband's real estate.

4. ——— : WIDOW : ESTOPPEL. Upon the sale of land belonging to the estate of the husband, by the executors, being the widow and one R., under power contained in the will, the former, and an agent employed by them to negotiate the sale, stated to the purchaser that the title to the land was perfect. It appeared that the statement was made in good faith, the widow believing at the time that the provisions of her husband's will, excluding her from dower, were enforceable. It also appeared that the will was of record and accessible to the purchaser. He bought the land and took the deed without requiring her to relinquish dower, " being convinced in his own mind," as he testified on the trial, " that she had no

dower." *Held*, that the widow was not estopped from subsequently claiming dower in the lands.

5. ——— : ——— : ———. Another tract belonging to the husband's estate was put up for sale by the public administrator, into whose hands the estate had passed, and the auctioneer stated that a warranty deed and perfect title would be given, but the public administrator being present immediately corrected him, stating that nothing would be sold except the title and interest of the decedent. The defendant, who was not present when the statement was made, purchased the land and took an administrator's deed for it. The widow neither made any representations, nor did anything in the entire transaction to, in any way, prejudice defendant's rights. *Held*, that she was not estopped from afterwards claiming dower in the land.

*Appeal from Pike Circuit Court.*—HON. E. J. ROBINSON, Judge.

REVERSED.

*F. W. Hinman* and *Theodore Bruere* for appellant.

The court erred in the trial of the cause: (1) In allowing the introduction of illegal testimony by the defendant; (2) by giving declarations of law on the part of the defendant not warranted by the evidence; (3) by giving on the part of defendant declarations of law inconsistent with those given on the part of plaintiff; (4) by refusing proper and pertinent declarations of law on the part of plaintiff; (5) by giving judgment for the defendant, when, under the law and evidence, it should have been for the plaintiff. *Hastings v. Dickerson*, 7 Mass. 153; *Gibson v. Gibson*, 15 Mass. 106; *Vance v. Vance*, 8 Shep. 364; *Blackmore v. Blackmore*, 16 Ala. 633; 2 Scribner on Dower [Ed. 1867] ch. 15, pp. 251–57; *Perry v. Perryman*, 19 Mo. 469; *Dudley v. Davenport*, 85 Mo. 462; *Sweaney v. Mallory*, 62 Mo. 485; *Hart v. Giles*, 67 Mo. 175; R. S., 1879, secs. 2197, 2199, 2200, 2202. Respondent overlooks in his brief entirely the fact that the *will did not pass* to appellant any real estate.

*S. M. Edwards* and *Macfarlane & Trimble* for respondent.

(1) The will of the deceased makes such provision for his widow as requires her to renounce its provisions in the manner and within the time provided by section 2200 before she can claim dower in defendant's land. At common law any devise to a wife in lieu of dower, express, or necessarily implied, would require an election. She could not claim under and against the will. Bishop on Married Women, secs. 435–6; *Pemberton v. Pemberton*, 29 Mo. 408; 1 Wash. on Real Estate, p. 323, sec. 23; *Herbert v. Wren*, 7 Cranch, 378; Story's Eq., sec. 1088; 2 Scribner on Dower [2 Ed.] 439 *et seq.;* Pomeroy's Eq., secs. 492, 502. (2) Section 2200, Revised Statutes, changes the common law in respect to elections, the manner and time of making them, and concludes the widow in case real estate is devised to her, if the election or renunciation be not made in the manner and within the time provided. *Bretz v. Matney*, 60 Mo. 444; *Daugherty v. Brown*, 64 Mo. 159. (3) No statutory renunciation of the will was made, and if real estate were devised to the widow there can be no further controversy. It is conceded that the will does not in express terms and directly give to the widow real estate, but we insist, in order to construe the will intelligently, it must be read in connection with the deed to which it refers; and the deed would, as the testator evidently intended, become a part of the will. 1 Parsons on Cont. [4 Ed.] 14, 15; 1 Addison on Cont. 337; Broom's Legal Maxims [7 Ed.] 622. (4) The recital in the will is a sufficient devise of real estate to her, the land referred to being conveyed to her by the deed. *Gelzer v. Gelzer*, 1 Bailey Eq. 387; 2 Scrib. on Dow., p. 415, sec. 47; Story's Eq., sec. 1076. (5) In respect to a devise of personal property the common law has not been changed.

The widow must elect in the time and manner required at common law. *Pemberton v. Pemberton*, 29 Mo. 412; *Bryant v. Christian*, 58 Mo. 102; Bishop on Married Women, sec. 432, note, and 436; see also authorities cited on first point. (6) At common law, if it appear either by express words or by clear and manifest implication that the testator meant to exclude the widow from dower, she will be excluded unless she otherwise elect. The intention must prevail. *Stark v. Hunton*, 1 N. J. Eq. 216; Scribner on Dower [2 Ed.] 439. The general rule is, that express words of exclusion are not necessary to bar dower and to require an election. The will must be construed according to its intent. (7) Plaintiff made such an election in this case as barred her of her dower. No express election was made of record or in writing, so far as appears from the record, nor was that necessary. An election may be by parol, or it may be implied from the facts and circumstances in the case. 2 Scrib. on Dow., p. 511 *et seq.;* 1 Bishop on Married Women, sec. 441. (8) Plaintiff received and used the personal property bequeathed to her without accounting for it as executor. An election in such case may be implied. 2 Scrib. on Dow., p. 513, sec. 31; *Delvy v. Vinal*, 1 Met. 57; *Brown v. Cantrall*, 62 Ga. 257; 1 Wash. on Real Prop., p. 323, sec. 23; 1 Bishop on Married Women, sec. 441. (9) An election may be implied from failure to assert a claim for a long time. 2 Scrib. 515, *et seq.;* 1 Wash., p. 266, sec. 24. (10) An election may also be implied from her own declarations and acts. This will be considered more appropriately under the defence of estoppel. (11) If plaintiff had made no election she might, and we think should, have the right to do so after the provision made for her had failed; and even if she had made an election, she should in equity, probably be allowed to renounce it, except in cases where the rights of third parties had accrued. *English v. English*, 3 N. J. Eq. 504; *House v. Van*

*Shaick*, 7 Paige, 221 ; 1 Bishop on Married Women, sec. 442. (12) The conveyance to plaintiff of the St. Charles property was a jointure, and if accepted by her would bar her dower in this land. R. S., 1879, sec. 2201. (13) Plaintiff, by her own conduct and declarations, is estopped from setting up a claim to dower in this case. *Swinney v. Mallory*, 62 Mo. 485 ; *Collins v. Roberts*, 63 Mo. 48 ; *Bailey v. Williams*, 73 Mo. 310 ; *Perry v. Hale*, 75 Mo. 503.

BRACE, J.—In the year 1872, James M. Martien died testate, seized of the following real estate, situate in Audrain county, Missouri, to-wit : East half of section 4, township 57, range 8, west ; and the southwest quarter of section 34, township 52, range 8, west, leaving the plaintiff his widow. The testator, by his will, bequeathed to the plaintiff certain personal property, and one hundred dollars in money, and made the following further provision, and no other, for his widow : " Section 3. Having purchased, for my said wife, the house and lot in the city and county of St. Charles, with my own means, and caused the same to be conveyed to her and her heirs, as evidenced by deed from James P. McKinney and wife, dated May 17, 1865, and recorded, etc., it to be held by her in lieu and discharge of her dower in my real estate, and the same having been accepted by her as such, I do, in this, my last will and testament, make no further provision for her out of my real estate." The testator devised portions of his real estate to his children, separate tracts to each for life, remainder to their heirs ; all the residue he devised to plaintiff and one Reid, executors named in his will, in trust to pay debts, and for · other purposes, and gave them express power to sell and convey ; the said southwest quarter of section 4 he devised to two of his daughters, and the said east half of section 34 was a part of the residue. Plaintiff and Reid qualified as

executors, and took charge of the estate. The executors resided in St. Charles county, and employed John P. Clark, a real estate agent, living in Audrain county, to negotiate sales of land devised to them for that purpose. In 1874 or 1875, Clark negotiated the sale to defendant of the said east half of section 4; and on March 13, 1876, the executors executed and delivered to defendant a deed for said half-section. Afterwards the estate passed into the hands of the public administrator of St. Charles county, who, on the seventeenth day of November, 1877, in pursuance of an order of the probate court, sold the said southwest quarter, for the payment of the debts of said testator, at public sale, to the defendant, and on the seventh day of March, 1878, executed to him a deed therefor. This action, by the plaintiff, widow of said testator, for assignment of dower in said real estate, and for mesne profits, was commenced in the circuit court of Audrain county, December 27, 1882.

As a bar to plaintiff's recovery, the defendant interposed three pleas: (1) The acceptance of a jointure in lieu of dower; (2) the acceptance of the provisions of testator's will in lieu of dower; (3) estoppel *in pais*. The case was removed, by change of venue, to the circuit court of Pike county, and was tried by the court without a jury, and all the issues found for the plaintiff, except the issue on the plea of estoppel, which was found for defendant and judgment rendered in his favor, from which he appeals to this court. The only question before us, on the record, is the action of the circuit court in finding for the defendant on the plea of estoppel, but as the question of the plaintiff's right of dower in the land has been presented in the briefs and argument of counsel on each side, and this case will have to be remanded for further proceedings, we deem it not improper, having considered the matter, to express an opinion upon that right before passing to the consideration of the error complained of in the action of the circuit court, and

which, alone, is directly presented by the record for review in this court.

In regard to that right, it is only necessary to say that the deed from McKinney and wife to the plaintiff, being an absolute conveyance in fee of the real estate therein described to the plaintiff, containing no expression that it was to be in discharge of her dower in the real estate of her husband, did not have the effect of creating an estate of jointure, which she was by law required to renounce in order to have her right of dower in such real estate. R. S., secs. 2201, 2202; *Perry v. Perryman,* 19 Mo. 469; *Dudley v. Davenport,* 85 Mo. 462. That the testator, by his will, having made no devise of real estate to his wife, and the bequest of personalty therein contained being voluntary and unconditional, she was not required to renounce the provisions of the will, or make an election, in order to be endowed of the real estate whereof her husband died seized. R. S., secs. 2199, 2200; *Halbert v. Halbert,* 19 Mo. 453; *Pemberton v. Pemberton,* 29 Mo. 408; *Bryant, Adm'r, v. McCuen,* 49 Mo. 546. The recital in the will was no evidence by which plaintiff's absolute title in fee-simple in the real estate conveyed to her by the deed of a stranger could be converted into an estate of jointure, and the deed and will, together or separately, evidenced no such provision made for the wife, out of the estate of the husband, as required a renunciation of the provisions of the will of her husband, in order that she might enjoy her right of dower in the real estate of which he died seized, and the circuit court, in this case, correctly held that plaintiff had right of dower in the real estate purchased by the defendant.

The testimony bearing upon the question of estoppel as to the three hundred and twenty-acre tract, is substantially as follows. John P. Clark, agent for the executors, testified: "I saw Reid and Mrs. Martien

several times about the sale of lands belonging to the Martien estate, being employed by them to negotiate sales. I conversed with them about the title, as there were rumors to the effect that the title of deceased to the lands was defective. Both plaintiff and Reid authorized me to say to purchasers that the title was perfect. I continued to negotiate sales until the public administrator took charge of the estate. I negotiated the sale of the tract sold by the executors to defendant. It was the land he first purchased. I think it contained three hundred and twenty acres. Defendant talked with me about the title, and I told him Mrs. Martien and Mr. Reid had authorized me to say the title was unquestionable. Mrs. Martien had told me that the will provided for the sale of that land, and the deed from the executors would convey a good title. At that time land was selling low, and I think the price paid by defendant was a fair one. I had several conversations about the land with Mrs. Martien, but many more with Reid. Some doubt about the title to the land arose from a sale for back taxes, and the Howell claim. In my conversation with defendant, the will of Dr. Martien was referred to in relation to the provision for the sale of the land, and whether a sale by the executors, as trustees, would confer a good title. Mrs. Martien and Reid, the executors, were then acting as trustees, under the will. Nothing was ever said to me, by either of them, about her dower, in so many words. The sale I negotiated with defendant was made in 1874 or 1875. I never heard the term, dower, used by Mrs. Martien in 'connection with the sale of the land. She said a perfect title would be given.''

The defendant, E. B. Norris, testified: "I am the defendant in this action, and own the lands described in plaintiff's petition. I negotiated with Judge Clark the purchase of three hundred and twenty acres, sold me by the executors of James M. Martien. He said the

title to the Martien lands was perfect. He said the will provided for dower. I never talked with plaintiff or Mr. Reid about dower. There was no reason why I should have done so, as I was satisfied, in my own mind, that plaintiff had no dower in the land. The deed was executed by Mr. Reid and Mrs. Martien, March 14, 1876. I took possession on the second of that month and commenced improving it. I paid one-third down and received the deed. Mrs. Martien came to my house before the deferred payment was due, when I was setting out shade trees, but she did not say anything about dower then. I first received notice of her claim about the time this suit was brought. I paid full value for the three hundred and twenty-acre tract. I never saw Mrs. Martien until after my purchase of the three hundred and twenty-acre tract. In my conversation with Judge Clark, he represented that Mr. Reid and Mrs. Martien were selling under the provisions of the will, which made provision for Mrs. Martien. I received the deed from Judge Clark, and it was in conformity with our contract, as I understood it. I never made 'any objections to the declarations in the deed, as I supposed the widow had no dower in the land. I negotiated the purchase of the three hundred and twenty-acre tract with Judge ' Clark. Don't think I saw Reid before the purchase." Recalled—"I never asked him (Judge Clark) about Mrs. Martien's dower, as I thought she had no interest in the land."

Mrs. Martien testified to the effect that she took no active part in the settlement of her husband's estate; signed papers as requested by her co-executor, who negotiated the sales of the real estate, and transacted the other business; that the question of her dower was never alluded to in any conversation between her and Judge Clark, and that she never did or said anything as executrix, trustee, or in her private capacity, contemplating a relinquishment of her dower rights in her

husband's estate.   The other testimony tended to show sales of real estate made to other parties, by the executors, and that plaintiff made no claim of dower until a short time before this suit was brought.   The deed from the executors was an ordinary executors' deed, reciting the power conferred upon them to sell by the will, and the order of the probate court, and conveying the right, title, and interest of the decedent in said tract of land to the defendant, without any covenants for title, and was signed and acknowledged by them, in their official capacity as executors, and nothing therein contained could operate as an estoppel.   Nor have we been able to discover in the facts proven in this case, the elements necessary to constitute an estoppel *in pais*.   We have found, from an examination of the provisions of the will of plaintiff's deceased husband, the statute law, and the authorities that, at the death of her husband, she became entitled to have her dower in the real estate, purchased by defendant, assigned her; she has never received any compensation for that right, has never formally relinquished it, and she ought not to be deprived of it, unless she has been guilty of such practices as induced the purchaser to take the estate under the belief that she waived her right of dower, and it may be as well to premise the consideration of that question by the remark, that, in view of the fact that the existence of the right seems to have been questioned by many, some of them learned in the law, that it would be no stretch of charity to suppose that the plaintiff may have had such doubts of her right as to make her loth to submit it to legal arbitrament, and hence we ought not to attach too much importance to the fact that she has been tardy in asserting what may have been hitherto, to her, only a supposed right.

The tract of land, with reference to which we are now considering plaintiff's conduct, was sold to the defendant by the agent of the executors, Clark, and waiv-

ing the discussion of the question whether his employment, by the executors, to sell the lands of their testator, clothed him with apparent authority to deal in any manner with plaintiff's right of dower in those lands, let it, for the purposes of this argument, be conceded, that he had such apparent authority and that his declarations *quoad* the land and the title thereto are to be taken as her declarations. The question then arises, did he undertake to deal with that dower interest in negotiating the sale of the land to the defendant, or did he make any declarations by which defendant could have been induced to believe that if he made the purchase he would acquire that dower interest, or by such purchase he would acquire the land discharged of such dower interest. It must be conceded, from the evidence, that the agent did not undertake to sell to defendant the dower interest, or that he made any declaration by which defendant could have been induced to believe that he would, by his purchase, acquire such interest, and if any declarations made by the agent could be construed as having the effect of inducing the defendant to believe that he would, by his purchase, and by virtue thereof, acquire the land discharged of dower, it is contained in the declaration, "that the title was perfect or unquestionable." Can that declaration be thus construed? We think not, for two reasons: (1) From the connection in which the expression is used, it must have referred to the title of the decedent, as that was the only title which was discussed between the agent and the defendant, and the power of the executors to convey it under the will. But, waiving this, it could not have been understood as including the dower interest, for the declaration of the agent in regard to that interest necessarily excludes the idea that the defendant would, by virtue of the purchase, acquire the land discharged of the dower, since it distinctly informed him that "the will provided for dower." The declara-

tions of the agent could not have been understood by the defendant to mean that if he would make the purchase the plaintiff would waive her dower, or that, by the purchase, he would acquire her dower, or that, by virtue thereof, he would acquire the land, discharged of her dower. The most that can be claimed for it is, that, by the purchase, he would acquire the land in which there was no dower interest, because the "will provided for dower."

The next question to be considered is, can the defendant be heard to complain, if the declaration that "the will provided for dower" turns out to be untrue. It cannot be contended that the will did not provide for dower according to the understanding of the parties at the time; it certainly purported in some way to do so, and the defendant has insisted from the beginning that it did so provide; and that view of its provisions has been earnestly and ably pressed upon our consideration in this case by his learned counsel, and if there was falsity in the declaration, it was not in the fact stated, but in the opinion expressed or implied, which, though erroneous, yet, being the mere inference of a non-expert, affords no ground for equitable estoppel. This plea can ordinarily be only invoked when there has been a misrepresentation of a material fact. No fact was misrepresented or concealed by this declaration; on the contrary, it pointed out and advised the defendant of the source from which the conclusion was inferred, the will of the testator, which was spread upon the public records, and was equally as accessible to the defendant as it was to the plaintiff, and which she was under no greater obligation to correctly construe than was the defendant; but, even if any or all of the declarations of the agent were sufficient to estop the plaintiff from claiming her dower, they could not have that effect, unless the defendant relied upon such declarations, and upon the faith of them made the purchases. His

own evidence shows conclusively that this was not the fact, for he in his evidence says: "I was satisfied in my own mind that the plaintiff had no dower," and gave this as the reason why he did not talk to Mrs. Martien or Reid about her dower; in another connection he gave the same reason why he made no objections to the declarations in the deed of the executors which he says, "was in conformity · with the contract as I understood it," and in yet another connection he gave the same reason why he did not talk with Judge Clark about her interest in the land. So that, whatever possible construction ingenuity may be able to place upon any, or all, of the declarations of plaintiff's agent in the sale of this land as affecting her dower right, the defendant relied upon none of them for that purpose, and there was no estoppel in the case, so far as the three hundred and twenty-acre tract is concerned. And as to the one hundred and sixty-acre tract the plea has, if possible, less to rest upon. The one hundred and sixty-acre tract was sold at public sale by the public administrator, after the estate had passed out of the hands of the executors. The evidence tended to show that the plaintiff was present at the sale, that the auctioneer, in stating the terms of the sale, said that a warranty deed and a perfect title would be given; that he was immediately corrected by the administrator, who, in the hearing of all present, announced that nothing would be sold except the right, title, and interest of the decedent, and that only an administrator's deed would be given; that the defendant was not present when the sale commenced; that the land was knocked off to some bidder whose name does not appear; that the administrator and the bidders repaired to Judge Clark's office to make payments and sign the necessary papers; that the bidder for this land objected to consummating his purchase, and the defendant being present was, by the consent of the administrator, substituted for the original bidder, complied with

the terms of the sale, was reported by the administrator as the purchaser, and afterwards received an administrator's deed therefor. There was nothing done or said in this whole transaction by plaintiff or anybody that could prejudice the plaintiff's rights in the premises. The incidents of the occasion emphasized the fact to every bidder that he was to purchase nothing but the interest of the decedent.

The conclusion, from all the evidence in this case, is irresistible that the defendant bought the land described in plaintiff's petition, not upon the faith of any representation made by plaintiff or her agent, as to her dower interest, or upon the faith of her conduct in respect thereto, but upon the faith of his own conviction, from his knowledge of the provisions of the testator's will, that she had no right of dower in the land; the consequences of his erroneous conclusion in that matter, he cannot be permitted to evade by a plea of estoppel in which there is no merit.

The circuit court erred in giving instructions five and six for defendant, and in holding that plaintiff is estopped from asserting her right of dower in the real estate described in the plaintiff's petition, for which error the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion. All concur, except Norton, C. J., absent.